UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE,

    **Plaintiff,**

    v.

WILLIAM J. BURNS, Director of the
Central Intelligence Agency, *et al.*,

    **Defendants.**

Civil Action No. 23-2937 (JEB)

## MEMORANDUM OPINION AND ORDER

Plaintiff Jane Doe, a trainee at the Central Intelligence Agency, alleges that she was sexually assaulted by a fellow trainee in a stairwell at the Agency's headquarters. See ECF No. 1 (Compl.), ¶ 2. She claims that after she reported the incident to the CIA, it sought to dissuade her from filing a criminal complaint and ordered her to make false statements to law enforcement. Id. Unwilling to be deterred, Doe lodged a complaint, obtained a protective order against her assailant, and, after receiving protected whistleblower status, spoke to congressional oversight committees with jurisdiction over the Agency. Id., ¶¶ 3–4. She asserts that while her assailant awaited a criminal trial, the CIA retaliated against her, including by "spreading false allegations" that she had engaged in "an extramarital affair" and "sharing her personal Agency records with her assailant's defense team in an attempt to intimidate her from testifying at the criminal trial." Id., ¶¶ 5–6. Despite the Agency's alleged "improper and illegal efforts on her assailant's behalf," Doe testified at his trial, and he was found guilty of assault and battery — which, Plaintiff says, is "the first-ever conviction for workplace sexual violence at the Agency." Id., ¶¶ 7, 14.

1

Doe has filed this suit against the CIA, its Director, the director of the Agency's Office of Security, and two unidentified CIA officers who were allegedly involved in leaking her workplace instant messages and other records. Id., ¶¶ 11–14. She contends that Defendants' conduct in the lead-up to and aftermath of her assailant's trial violated the Privacy Act of 1974, 5 U.S.C. § 552a, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1985–86. For a variety of reasons, including that this suit involves sensitive facts and revealing her identity would jeopardize her career as an undercover operative, Plaintiff filed a Motion to Proceed Under Pseudonym. See ECF No. 2. The Court will grant the Motion, subject to any further consideration by the United States District Judge to whom this case is randomly assigned. See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); id. 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court.").

## I.     Legal Standard

Generally, a complaint must identify the plaintiffs. See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1). This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found. v. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)). A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020). As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full

disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

**II.     Analysis**

At this early stage, Plaintiff has met her burden to show that her privacy interests outweigh the public's presumptive and substantial interest in learning her identity.

First, as the Complaint makes clear, Doe does not seek to proceed under a pseudonym "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature."  Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original).  "Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects."  Doe v. Cabrera, 307 F.R.D. 1, 5 (D.D.C. 2014); see also Doe v. De Amigos, LLC, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) ("Courts have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault.") (citation omitted).  This suit is no exception.  The Complaint reveals "intimate or sensitive personal information" of the kind "traditionally recognized under this factor, such as 'sexual activities . . . [and] bodily autonomy.'"  Doe v.

3

Rogers, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (quoting Doe v. Bogan, 542 F. Supp. 3d 19, 23 (D.D.C. 2021)). Doe describes both her assault and the events leading up to it in detail. See, e.g., Compl., ¶ 15 (assailant "wrapped a scarf tightly around her neck, began strangling her with it, made lewd remarks, and tried to kiss her forcibly on her mouth"); id., ¶ 16 (assailant messaged Plaintiff about "why to bleach the anus" and ejaculation hours before the assault).

While she has already testified about these events at her assailant's trial, Doe's name is not publicly associated with the incident. See, e.g., Jim Mustian & Joshua Goodman, CIA Stairwell Attack Among Flood of Sexual Misconduct Complaints at Spy Agency, Associated Press (Aug. 24, 2023), https://perma.cc/GW7H-UQST (referring to Plaintiff solely as "a colleague" and "the woman"); Associated Press, CIA Sexual Assault, Battery Case Tried in Public Courtroom Emboldens Sexual Misconduct Reckoning, PBS (Aug. 24, 2023), https://perma.cc/B8CJ-A3PD (similar); cf. Roe v. Bernabei & Wachtel PLLC, 85 F. Supp. 3d 89, 97 (D.D.C. 2015) (denying motion to proceed pseudonymously in part because sexual-assault victim's name was already publicly associated with the incident). Courts have recognized, moreover, that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." De Amigos, LLC, 2012 WL 13047579, at *2 (quoting Doe No. 2 v. Kolko, 242 F.R.D. 193, 195–96 (E.D.N.Y. 2006)). That interest is no doubt implicated here.

Doe's concerns about disclosure of her identity threatening her employment are also relevant to this factor. See, e.g., Doe v. Lieberman, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020) (first factor supports pseudonymous filing where plaintiff alleged that "if her identity were tied" to the case, she would "risk[] losing employment opportunities and her . . . freedom to pursue the occupation of her choice") (cleaned up); Doe v. Benoit, 2019 WL 13079193, at *4

(D.D.C. Apr. 30, 2019) (same where plaintiff described "the risks [that] being associated with terrorism" would have on her current and future employment). Here, Doe explains that public disclosure of her identity in connection with this litigation "would effectively end her career as a CIA officer, which requires her to operate undercover to conduct covert human intelligence operations." ECF No. 2-1 (Mem.) at 5. While she has not supported that allegation with evidence, such as a "sworn declaration[]," John Doe Co. No. 1 v. CFPB, 195 F. Supp. 3d 9, 21 (D.D.C. 2016), it is far from "speculative," id. at 22, because undercover work and public notoriety do not pair well. Doe has, accordingly, shown that the first factor weighs in her favor at this early juncture.

The second factor, which concerns the "risk of retaliatory physical or mental harm" to Plaintiff and to "innocent non-parties," also counsels granting the Motion. See In re Sealed Case, 971 F.3d at 326 (internal quotation marks and citation omitted). Doe fears that she could suffer both physical and mental harm if her identity is publicly revealed in relation to this case. She explains that if she were to "attempt[] to conduct . . . sensitive operations in her actual name after her CIA affiliation was publicly disclosed, her arrest or even death as well as that of individuals with whom she came into contact abroad at the hands of the United States' adversaries would be likely." Mem. at 5.

Public disclosure, she asserts, is also "likely to result in additional psychological trauma" to both her and her husband. Id. at 5–7. She fears that revealing her identity "may undermine any '[psychological] progress [she] has made' since her attack." Id. at 5 (quoting Cabrera, 307 F.R.D. at 6); see also De Amigos, LLC, 2012 WL 13047579, at *2 ("[P]ublicity could exacerbate the psychological harm that [plaintiff] has already experienced . . . ."). She points out that she "is the first female CIA officer to successfully bring a criminal complaint of sexual assault by a

5

CIA colleague," and "[t]he combination of the unique nature of her CIA career and her status as a sexual assault victim[] makes her especially vulnerable to negative psychologically damaging remarks by the public." Mem. at 6. That concern is bolstered by the media attention that this very lawsuit has already received since it was filed earlier this week. See Ben Feuerherd, CIA Trainee Sexually Assaulted in Langley Stairwell Accuses Agency of 'Witness Tampering,' 'Slut Shaming', The Messenger (Oct. 3, 2023), https://perma.cc/24MN-6GAC. It is also strengthened by Doe's allegation that the CIA has "repeatedly demonstrated [its] capability to engage in retaliation in response to [her] attempts to seek justice for the harms she suffered," including by "spread[ing] false allegations of an extramarital affair by Plaintiff." Mem. at 6; see Compl., ¶¶ 59–62. Doe adds, moreover, that her husband — an "innocent non-part[y]," In re Sealed Case, 971 F.3d at 326 — has similarly been "the subject of a retaliatory attack by CIA spreading [that] false rumor" and "is likely to suffer further psychological harm at the public revelation of his wife's identity." Mem. at 6–7 (citing Compl., ¶¶ 59–64).

To be sure, Plaintiff does not attach an affidavit supporting these claims, cf. Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023) (referencing affidavits in support of motion), and "[d]iscovery may well render [her] concerns unsupported and unwarranted." Doe v. Fed. Republic of Germany, 2023 WL 4744154, at *3 (D.D.C. July 3, 2023). At this early stage, however, the Court finds that the allegations in the Complaint are sufficient to establish that revealing Doe's name publicly in connection with this litigation poses a risk of harm. See Compl., ¶¶ 59–62, 100; Mem. at 5. This factor therefore supports letting Plaintiff proceed under pseudonym.

The third factor cuts the other way, as Plaintiff acknowledges that her case does not implicate the privacy interests of any minors, see Mem. at 7, but the fourth and fifth seal the deal

6

for pseudonymity.  With respect to the fourth, Plaintiff has sued only governmental actors, and "anonymous litigation is more acceptable when the defendant is a governmental body because government defendants 'do not share the concerns about "reputation" that private individuals have when they are publicly charged with wrongdoing.'"  J.W. v. Dist. of Columbia, 318 F.R.D. 196, 201 (D.D.C. 2016) (quoting Cabrera, 307 F.R.D. at 8); see also Doe 1 v. George Washington Univ., 369 F. Supp. 3d 49, 67 (D.D.C. 2019) (distinguishing "private litigants, who presumably have concerns about their respective reputations").  Although Doe alleges serious wrongdoing on the part of those governmental actors and "the public has a strong interest in monitoring . . . the positions that its elected officials and government agencies take in litigation," Hyatt v. Lee, 251 F. Supp. 3d 181, 184 (D.D.C. 2017) (citation omitted), the public will be able to vindicate that interest here regardless of whether Doe uses a pseudonym because she has filed her lawsuit on the public docket, not under seal.  The fourth factor, accordingly, supports her Motion.  As for the fifth, Defendants would suffer no "risk of unfairness" if the Motion were granted because they already know her identity.  See Mem. at 8; In re Sealed Case, 971 F.3d at 326 n.1 (this factor is "not implicated" where defendant knows plaintiff's identity).

On balance, although the third factor disfavors Plaintiff, all the others tip the scale toward permitting her to proceed under a pseudonym for now.

The Court accordingly ORDERS that:

1. Plaintiff's [2] Motion to Proceed Under Pseudonym is GRANTED, subject to any further consideration by the United States District Judge to whom this case is randomly assigned;

2. All parties shall use the pseudonym listed in the Complaint in all documents filed in this action; and

3.  Within fourteen days of this Order, Plaintiff shall file on the public docket:

    i.  A pseudonymous version of her [2] Motion and any attachments; and

    ii. A sealed declaration containing her real name and residential address.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: October 5, 2023